**In re PLUMBING FIXTURE CASES.
No. 3.**

Judicial Panel on Multidistrict Litigation.
Dec. 27, 1968.

Before ALFRED P. MURRAH, Chairman, and JOHN MINOR WISDOM, EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH S. LORD, III, and STANLEY A. WEIGEL, Judges of the Panel.

## OPINION AND ORDER

WILLIAM H. BECKER, Judge of the Panel.

After a hearing on August 8, 1968, on September 13, 1968, the Judicial Panel on Multidistrict Litigation, under Section 1407, Title 28, U.S.C., ordered the transfer to the Eastern District of Pennsylvania of 37 related multidistrict civil treble damage antitrust actions, pending in seven other districts, and assigned them to the Honorable John W. Lord, Jr., District Judge, 295 F.Supp. 33.

The actions so transferred included actions originally filed in the Northern District of California, the Southern District of New York and the District of Columbia.

Later the Panel learned of nine additional similar actions pending in the Northern District of California, the Eastern District of Virginia, the Southern District of New York, the Eastern District of Wisconsin, the District of Kansas and the District of Columbia. These nine additional actions are listed in the appended Schedule B.

On October 8, 1968, in accordance with current practice the Panel, on its initiative, issued an order to show cause why the nine additional similar actions should not also be transferred under Section 1407 to the Eastern District of Pennsylvania and assigned to Judge John W. Lord, Jr., on the basis of the record of the hearing of August 8, 1968. This order further provided for a hearing on October 16, 1968, on all matters relating to (1) the proposed transfer and assignment of the additional actions to Judge Lord, (2) the transfer of the actions to another district or districts, and (3) defendants' motion to transfer the actions under Section 1407 to the Western District of Pennsylvania.

In the written responses to the order to show cause and notice of hearing, all parties except the City of New York agreed in substance to the proposed transfer and assignment of the nine additional actions to Judge John W. Lord, Jr., under Section 1407.

For the reasons hereinafter stated all actions listed in Schedule B will be transferred on the initiative of the Panel to the Eastern District of Pennsylvania and assigned to the Honorable John W. Lord, Jr., District Judge.

### The Position of the City of New York

The City of New York and its related agencies (the "City") on behalf of themselves and of a class to consist of all City, twon and school district governmental units in the State of New York having a population in excess of 50,000 persons, and of all public housing authorities in the State of New York, filed a civil treble damage antitrust action in the Southern District of New York on August 2, 1968. By letter of the same date addressed to the Clerk of the Panel, counsel for the City requested that it be allowed to participate in the hearing of August 8, 1968, although its case was not among those listed in the defendants' motion to transfer or in the notice and order for the hearing of August 8.

At the hearing on August 8, counsel for the City voluntarily appeared and stated, "We agree wholeheartedly * * with coordination, and we agree wholeheartedly that the proper forum would be Philadelphia, Pennsylvania" in the Eastern District of Pennsylvania.

In its response to the order to show cause and notice of hearing of October

16, 1968, the City expressly adheres to its position that the proper forum for transfer under Section 1407 would be the Eastern District of Pennsylvania but requested that the Panel order transfer of its action subject to the following two requests:

"First, since the New York City action is brought as a class action, the court in New York has the following obligation under Rule 23(c) (1) of the Federal Rules of Civil Procedure: 'As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained * * *.' Upon such determination, the court is required to direct notice to the members of the class. We do not believe that under Section 1407(a) 'pretrial proceedings' encompass a class action determination. Certainly if the entire file is transferred it would be impossible for the transferor court to discharge its obligations under Rule 23. Therefore, we request the Panel to order, as Mr. Margolis requested on August 8, that the City's action 'be allowed to go forth in the Southern District of New York for a determination of the class and the validity of the class action [by that Court] at the same time that coordinated discovery * * * continues.' (Transcript, pp. 117–8).

"Second, extensive pretrial discovery is already underway in the City's case. The City requests that any transfer order by the Panel require completion of such discovery as the parties have agreed to or which has been ordered by the District Court for the Southern District of New York prior to the date of the Panel's order."

In summary the City requests that, in the civil action in which the City is plaintiff, the Panel order that action be transferred in part, that is for all pretrial purposes except determination of the class action questions which would be reserved by Panel order for determination after transfer by the transferor court.

In its response and in oral argument counsel for the City state that under Section 1407(a) "pretrial proceedings do not include a class action determination."

In oral argument the consequences of this contention were illuminated by the following colloquy with counsel for the City:

"JUDGE WEINFELD: Why do you call it a local action? Are you referring to the fact that you brought it within the Southern District and it involves municipalities within the State of New York and housing authorities within the State of New York?

"MR. MARGOLIS: What I meant was the court where we filed the suit should be the one to determine the class action.

"JUDGE WEINFELD: There are housing authorities right adjacent to New York State. You have them in New Jersey, you have them in Connecticut, you have them in Pennsylvania, and you have municipalities that come within the same categories. Why should you not go on a metropolitan or regional basis? In fact, that is the whole thrust of housing today, isn't it?

"MR. MARGOLIS: Yes. Well, the City [chose] to restrict, in bringing its class action, on the basis of various judicial opinions on class actions.

"JUDGE WISDOM: You recognize that there may be conflicts in the courts with respect to the scope of this class action, do you not?

"MR. MARGOLIS: Yes.

"JUDGE WISDOM: Now, isn't one of the purposes of this Act to avoid such pretrial conflicts?

"MR. MARGOLIS: Our position is that we don't believe that the class action is part of pretrial. That is our position.

"JUDGE WISDOM: I recognize that that is your position, but how do you justify it?"

The City apparently requests that the reservation of power of the transferor court to determine the class action issue

be accomplished by dividing the papers in the file between the transferor court and the transferee court, that is, by not transferring "the entire file".

In substance the City contends that in a transfer under Section 1407 the transferee court lacks the power to determine the class action issue, and that that power remains in the transferor court after transfer.

### Rulings on the City's Requests

■ We do not agree with this interpretation. On the contrary we hold that there should not be separation of the class action issues and a reservation to the transferor court of power to determine the class action issues because (1) the Panel lacks the power to order such a separation or reservation, and (2) the exercise of such a power, if possessed, would be unwise and indiscrete.

The second request, that the Panel in its order of transfer require completion of discovery agreed upon or which has been ordered by the transferor court, is denied for the same reasons.

### Reasons for the Rulings

First, the nature of the questions to be determined by the Panel should be analyzed.

■ The contentions of the City raise questions of statutory construction. No question of the constitutionality of Section 1407 or of its application in these cases is raised. Only transfer under Section 1407 is under consideration. The City does not appeal to the discretion of the Panel or to forbearance by the Panel in the use of its statutory powers on principles of comity, but rather contends the Panel has no power to transfer the class action issue. In these circumstances, the questions presented are plainly questions of construction of the statute authorizing transfer. See Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254, l. c. 1260, and Ex Parte Collett, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207, 10 A.L.R. 2d 921, 922, both of which involved analogous questions of construction of the re-

lated Section 1404(a) providing for inter-district transfer for all purposes (change of venue) of civil actions for the convenience of parties and witnesses in the interest of justice. See also annotations on constitutionality, construction and application of Federal Statutes providing for transfer of civil actions. 5 A.L.R.2d 1239; 10 A.L.R.2d 932.

### Construction of the Clear Language of Section 1407

■ Under applicable principles of statutory construction, the language of the statute should be examined first. If the statutory language is clear, the words plain and the meaning clear, "there is no need to refer to the legislative history". Ex Parte Collett, supra, 337 U.S., l. c. 61, 69 S.Ct., l. c. 947, 93 L.Ed., l. c. 1211.

Paragraph (a) of Section 1407 is relied on by the City and contains some of the critical language. It reads as follows:

"(a) When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multi-district litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: *Provided, however,* That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded."

Paragraph (b) following immediately is as follows:

"(b) Such coordinated or consolidated pretrial proceedings shall be con-

ducted by a judge or judges to whom such actions are assigned by the judicial panel on multidistrict litigation. For this purpose, upon request of the panel, a circuit judge or a district judge may be designated and assigned temporarily for service in the transferee district by the Chief Justice of the United States or the chief judge of the circuit, as may be required, in accordance with the provisions of chapter 13 of this title. With the consent of the transferee district court, such actions may be assigned by the panel to a judge or judges of such district. The judge or judges to whom such actions are assigned, the members of the judicial panel on multidistrict litigation, and other circuit and district judges designated when needed by the panel may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings."

The language of paragraph (a) plainly and clearly authorizes transfer of "civil actions". The power is not granted to transfer of "civil actions or parts thereof" or "civil actions except the class action issue" as the City would have us hold. In federal civil procedure, and particularly in federal statutes authorizing transfer, the phrase "civil action" has a definite meaning. Rules 2 and 3, F.R.Civ.P.; cf. Ex Parte Collett, *supra*, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed., l. c. 1210.

■ Nor does paragraph (a), or any other, invest the Panel with the power to require completion of discovery underway, discovery as the parties have agreed to, or which has been ordered by the transferor court as requested by the City.

No contention has been made by the City that discovery is not a part of the pretrial proceedings contemplated by Section 1407. It is only in respect to determination of the class action questions under Rule 23, F.R.Civ.P., that this contention is made. Yet the Panel is requested to make special orders about discovery binding on the transferee court.

■■ Paragraph (b) clearly provides that the "coordinated or consolidated pretrial proceedings *shall* be conducted by the judge or judges to whom such actions are assigned" by the Panel. So if discovery, including completion of discovery, and determination of the class action questions are part of the pretrial proceedings, then those powers are by clear statutory mandate required to be conducted by the transferee court. The use of the word "shall" in the first sentence of paragraph (b) of Section 1407 makes this clear. The pretrial powers of the transferee court include the powers to modify, expand, or vacate earlier discovery orders. To coordinate discovery in the related cases, exercise of these powers may be necessary or desirable. The Panel has neither the power nor the disposition to direct the transferee judge in the exercise of his powers and discretion in pretrial proceedings.

The only power granted to the Panel to limit exercise of the pretrial powers of the transferee court is found in the proviso of paragraph (a) permitting the Panel to separate any "claim, cross-claim, counter-claim, or third-party claim" of a transferred civil action and to remand "any of such claims before the remainder of the action is remanded." This power is in harmony with a portion of paragraph (b) of Rule 42, F.R.Civ.P., authorizing the ordering of separate trials of claims, cross-claims, counter-claims and third-party claims in furtherance of convenience and to avoid prejudice where conducive to expedition and economy.

While paragraph (a) of Section 1407 permits separation and remand by the Panel of claims, cross-claims, counter-claims and third-party claims separable under paragraph (b) of Rule 42, it does not permit the Panel to order a separate trial "of any separate issue or * * * issues" which are also separable under paragraph (b) of Rule 42. This unequivocal and obviously deliberate withholding from the Panel of power to separate is-

sues in a single civil action assigning one or more to the transferee court and one or more to the transferor court is a clear, precise and wise limitation on the powers of the Panel.

There are other clear indications that Congress did not intend to permit the Panel to partition the issues in a single claim for relief and to assign powers of supervision and decision of the separate parts to two courts to be exercised contemporaneously. By authorizing the Panel to transfer "civil actions" (not parts thereof) for coordinated or consolidated pretrial proceedings and by limiting the Panel's powers of separation and remand to claims, cross-claims and counter-claims or third-party claims, Congress has made it "impossible to read the section as excising" the powers to determine the class action questions from the order of transfer. Cf. Ex Parte Collett, *supra*, 337 U.S., l. c. 58, 69 S.Ct., l. c. 946, 93 L.Ed., l. c. 1210.

■ The purpose of Section 1407 as shown independently by its clear language, corroborated by the legislative history,[1] including the reports of the

---

1. S. 3815 (S. 159, 90th Congress) was referred to the Subcommittee on Improvements in Judicial Machinery before which an initial hearing of the advocates of the bill was held on October 20, and 21, 1966. During those hearings Dean Neal,* one of the authors of the Judicial Conference bill, answered relevant questions on the precise issue here, as follows:

"Mr. Tydings. The bill provides for the transfer of claims for pre-trial procedures. It has been suggested that this conceivably is too broad and that the transfer should be for discovery under the Federal Rules of Civil Procedure only, leaving other pre-trial matters to the transferor district, to be conducted at perhaps the same time or later.

"The suggestion is also that the 'unit' which is transferred under the bill, the claim, is too broad, and that only 'issues of fact' need be transferred. Do you have any thoughts with respect to those two points?

"Dean Neal. Let me take the second question first. I think the appropriate unit to deal with is a claim or a cross-claim or counterclaim, because that is the basic unit under the Federal Rules of Civil Procedure insofar as they deal with separability of actions.

"Reference might be made specifically to Rule 42(b) of the Federal Rules of Civil Procedure, which deals with the problem of consolidation. I might say that Senate Bill 3815 really provides for a procedure that is quite analogous to what Rule 42 provides for, where cases are pending in the same district, and Rule 42(b) provides that in furtherance of convenience or to avoid prejudice, the court may in actions which it has consolidated, order the separate trial of any claim, cross-claim, counter-claim, third-party claim, et cetera.

"The provision in the proposed Section 1407 splitting off claims and sending them back to the originating district is based on the analogy to Rule 42(b) and I think that is correct.

"Now, the other suggestion, as I understood it, was that instead of transferring the case in toto for consolidated or co-ordinated pre-trial proceedings, only certain questions might be transferred to the transferee court and other issues left to be disposed of, presumably during the same period of time, by the transferor court. It seems to me that there are at least three rather serious objections to that.

"In the first place, I think it would be very difficult to frame any satisfactory definition that would tell you what kinds of issues should be dealt with by the transferee court and what kind by the transferor court, and I can imagine a great deal of argument and discussion going on as to whether a particular issue is of the kind that should be disposed of back home or should be disposed of by the transferee court.

"In the second place, it seems to me that it would be exceedingly awkward to have the determination of issues in the case being made partly in one jurisdiction and partly in another.

"The idea that a case could be pending in two different districts at the same time just seems to me to be a most awkward and inconvenient idea, and there are great problems of timing that would be involved, I would suppose. Certainly it would be convenient to dispose of certain issues before you got on to other issues and if you had to de-

---

* Dean Phil C. Neal, of the University of Chicago School of Law, formerly Executive Secretary of and Consultant to the Co-Ordinating Committee for Multiple Litigation. Dean Neal was one of the authors of and advocates of the passage of Section 1407, Title 18, U.S.C.

Congressional Committees and of the Judicial Conference, and by testimony before Congress of its authors, makes it clear that its remedial aim is to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate

cide that certain of these issues must first be determined by another district court, the whole process of getting on with the co-ordinated or common proceedings might be interrupted.

"In the third place, it seems to me that the idea of leaving anything pending in the transferor district while the consolidated proceedings are going forward is really a way of depriving the judicial system of some of the important advantages of bringing the cases together.

"I think, for example, about the various rulings on questions of law which came up early in the electrical equipment cases such as the tolling of the statute of limitations, the effect of the fraudulent concealment doctrine, the effect of the pleas of nolo contendere and so on.

"I think one of the important things about the conduct of the electrical equipment cases was that these questions were all brought on early for hearing and were determined, appeals were taken and we did not have the questions decided at widely different times in the different parts of the litigation.

"Also, there would certainly be an advantage in having only one court decide those questions instead of having to get dozens of different decisions in different courts with conflicts eventually resolved by appeal.

"It seems to me, in short, that the suggestion of leaving the litigation in this divided state is quite impractical and that the only way, if one wants to have a case determined partly in the originating district and partly in the transferee district, to do it is the division in time that 3815 calls for, that is to say, the case is moved for all purposes to the transferee district, up to the conclusion of pre-trial proceedings, and then may be sent back."

None of the suggestions to restrict the pretrial powers of the transferee court mentioned by Senator Tydings were incorporated in the new section.

At the same hearing the writer, in a statement describing operation of the bill, said:

"Upon a temporary transfer under new Section 1407 the pretrial proceedings in the transferee court would be conducted in accordance with the current provisions of the Federal Rules of Civil Procedure. The transferee court would possess all powers which may be ordinarily exercised by a district court in a case pending before it under the Federal Rules of Civil Procedure except that the transferee court would be required to remand the action for trial of the factual issues disclosed by the pretrial proceedings in the transferee court. Only if an action was settled, dismissed, determined by summary judgment, or otherwise disposed of in accordance with the Federal Rules of Civil Procedure, would there be no remand."

Others testifying at this hearing in support of the bill were Chief Judge Alfred P. Murrah (10th Cir.), Judge Edwin A. Robson (N.D.Ill.), Charles A. Bane, Esquire, Edward R. Johnston, Esquire, and Ronald W. Olson, Esquire, of the Chicago Bar. Chief Judge Thomas J. Clary (E.D.Pa.) testified in support of the bill before the same subcommittee on January 24, 1967.

In addition, the House Report No. 1130, 90th Congress, 2d Session, in which the Committee on Judiciary recommended passage of the bill, stated the following:

"The objective of the legislation is to provide centralized management under court supervision of pretrial proceedings of multidistrict litigation to assure the 'just and efficient conduct' of such actions. The committee believes that the possibility for conflict and duplication in discovery and other pretrial procedures in related cases can be avoided or minimized by such centralized management. To accomplish this objective the bill provides for the transfer of venue of an action for the limited purpose of conducting coordinated pretrial proceedings. The proposed statute affects only the pretrial stages in multidistrict litigation. It would not affect the place of trial in any case or exclude the possibility of transfer under other Federal statutes.

\* \* \* \* \*

"By the term 'pretrial proceedings' *the committee has reference to the practice and procedure which precede the trial of an action.* These generally involve deposition and discovery, and, of course, are governed by the Federal Rules of Civil Procedure See, e. g., rule 16 and rules 26–37. Under the Federal rules the transferee district court would have authority to render summary judgment, to control and limit pretrial proceedings, and to impose

district and appellate courts in multidistrict related civil actions. The conten-

sanctions for failure to make discovery or comply with pretrial orders." (Emphasis added)

In Senate Report No. 438, 90th Congress, 1st Session, the Committee on Judiciary recommended passage of the bill, stating, among other things:

"The purpose of the proposed legislation is to provide formal machinery to transfer, for coordinated or consolidated pretrial procedures, civil actions pending in different judicial districts, and have one or more common questions of fact.

\*　　\*　　\*　　\*　　\*

"Paragraph (e) provides that judicial review of transfer and subsequent orders of the panel is to be had only by extraordinary writ pursuant to 28 U.S.C. 1651, the All Writs Act. This procedure, more expeditious than appeal, is consistent with the overall purposes of proposed 1407. *Paragraph (e) also provides that no review of a panel order shall be in any other forum than the U.S. Court of Appeals of the transferee district, thus avoiding multiplicity of review proceedings and minimizing the possibilities of conflicting rulings.*" (Emphasis added)

Congress was keenly aware of the meaning of the bill on the question presented by the City.

Professor Thomas S. Currier, of the University of Virginia Law School, studied and analyzed H.R. 8276 for Deputy Counsel Trubow, of the Tydings Subcommittee. His analyses and suggestions were included in the appendix to the printed transcript of Hearings on S. 3815 at Chicago, October 20, and 21, at pages 84 to 87, inclusive. In his analysis Professor Currier correctly stated the following:

"(2) *Scope of transfer.*—The proposed legislation contemplates transfer of an 'action' to the transferee court, but for limited purpose of pretrial and discovery proceedings. The judicial panel on multidistrict litigation is authorized to separate and remand any 'claim, cross-claim, counterclaim, or third-party claim' before remanding the entire civil action, and is to remand the entire action 'at or before' the conclusion of consolidated pretrial proceedings. *Thus the minimum unit of litigation transferred is a 'claim.'* The claim that is to be transferred must involve 'one or more common questions of fact,' and transfer is to be ordered when it will 'promote the just and efficient conduct'

tions of the City in this case, if sustained, would make possible, and perhaps

of the action—i.e., by preventing duplication of pretrial and discovery proceedings as to the common issue or issues." (Emphasis added)

Professor Currier submitted for consideration of the subcommittee amendment of the bill to permit the transferor court to process the "unique issues" while the transferee court processed the "common issues". The suggestion was as follows:

"The minimum unit to be transferred appears to be larger than is necessary to permit maximum realization of the purpose of the legislation. The action that is to be transferred, and even the 'claim' that will remain in the transferee court after it separates and remands other claims, cross-claims, etc., will normally include some unique factual issues, such as damages, in addition to the common issues that are the ground for transfer. Pretrial proceedings as to these unique issues will not be facilitated by consolidation and hence normally ought not to be conducted by the transferee court unless, under the criteria of section 1404(a), the entire action is one which should be transferred there.

"It is extremely likely, of course, that the transferee court under the proposed legislation would limit pretrial proceedings to the common issues even though the bill does not require such limitation. The unique issues could be left for pretrial proceedings in the transferor court after the action has been remanded. But it is questionable whether pretrial proceedings on the unique issues should always be made to await conclusion of pretrial proceedings on common issues. Efficiency may require that precedence be given, in the event of conflict, to pretrial of the common issues. But such conflicts may prove to be infrequent. In the context of the recent electrical equipment cases, for example, many potential deponents on issues of damages may have had no role to play in the pretrial proceedings on issues of conspiracy, and the only other likely source of conflict—the inability of a defendant's attorney to attend two pretrial proceedings simultaneously—is not, as a practical matter, really applicable to large corporate defendants, which are apt to be represented by a host of attorneys anyway.

"It thus appears that dispatch of litigation would be better served if the proposed legislation limited the scope of transfer to common issues of fact (in-

probable, pretrial chaos in conflicting class action determinations which Section 1407 was designed to make impossible.

In March 1965, a draft of Section 1407 was recommended for approval by the Judicial Conference of the United States by the Co-Ordinating Committee for Multiple Litigation in a formal report dated March 2, 1965, describing the purposes and operation of the proposed section. The section in its original form was drafted by the Co-Ordinating Committee. This report is part of the legislative history. Ex Parte Collett, supra, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed., 1. c. 1214. In March 1965, the Judicial Conference of the United States approved the proposed legislation in principle. On the basis of this approval a bill incorporating the proposed new section was introduced in the House of Representatives as H.R. 8276, 89th Congress, by Congressman Emanuel Celler and referred to the Committee on Judiciary. This report contained not only the original draft of the proposed Section 1407, but also a formal comment thereon which recognized the dangers in simultaneous prosecution of separate class actions under then proposed and now adopted Class Action Rule 23. The comment included a reference to difficulties of separate actions involving repetitious discovery mentioned in the Advisory Committee note to the proposed amended, now adopted, Rule 23. The full comment of the Co-Ordinating Committee is set forth in the appendix following this opinion and order.

 It is in the field of class action determinations in related multidistrict civil actions that the potential for conflicting, disorderly, chaotic judicial action is the greatest. Under the recently amended Class Action Rule 23, F.R. Civ.P., powers for defining classes of parties, including plaintiffs and defendants, are not expressly limited by space, time, description of party or nature of claim or defense. Already, in related multidistrict litigation coming to the attention of the Panel, separate district courts have been requested to make conflicting class action determinations. In these circumstances it is not certain that each district court will always be able to learn of the conflicting requests made to other courts. It is certain, however, that if these conflicting requests are determined under Section 1407 in a transferee court, the information and means for fair, speedy and economical coordinated determinations will exist. It is the clear intent of Section 1407 to invest the transferee court with the exclusive powers, after transfer, to make the pretrial determinations of the class action questions. In the similar protection devices litigation we said: "Determination of all matters involving questions of class actions shall be left to the sound judgment of Judge Metzner (the transferee judge)." In re Protection Devices and Central Station Protection Service Antitrust Cases, No. 9,295 F.Supp. 39 at page 40.

 To this concept the City replies that the pretrial determination of the class questions is not a part of the "pretrial proceedings" as used in Section 1407. No authority is cited for this unusual contention. The easy answer to this contention is probably the best one,

---

cluding issues of mixed fact and law), and permitted the transferor court to conduct contemporaneous pretrial proceedings on the unique issues, subject only to priority, in the event of conflict, of pretrial proceedings in the transferee court. In any event, the legislation should expressly limit pretrial proceedings in the transferee court to common issues."
This suggested amendment was deliberately omitted in the bill, S. 159, enacting the new section into law. The City now is

asking the Panel by construction to do what Congress deliberately declined to do.

In addition attention is invited to discussions of the Judicial Conference Bill prior to its amendment and enactment. *Consolidation of Proceedings Under Proposed Section 1407 of the Judicial Code: Unanswered Questions of Transfer and Review*, 33 U. of Chicago L.Rev. 558, 1.c. 561 (1966); *The Problem of Venue in Multiple District Litigation Part IV. The Celler Bill*, 41 Notre Dame Lawyer 507, 1.c. 523–526 (1966).

namely, that pretrial, as an adjective, means before trial—that all judicial proceedings before trial are pretrial proceedings. This is known not only by lawyers and judges, but is known or can readily be learned by laymen. See Random House Dictionary of the English Language, unabridged ed. 1141. See also "Pretrial Calendar" 33 Words and Phrases 511.

From a legal standpoint the class action request and its determination are the most urgent of the pretrial proceedings. This is recognized explicitly in subparagraph (c) (1) of Rule 23, F.R. Civ.P., which specially commands that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Under this subparagraph the order when made may be conditional, and may be altered or amended at any time before the decision on the merits. (So the process may continue through pretrial and after the pretrial proceedings have been completed. This leaves the transferor court some power and discretion before transfer and after remand.)

In an action filed as a class action most pretrial processes (specifically and generally listed in Rule 16, F.R.Civ.P., under the title *"Pretrial Procedure; Formulating Issues"*) involve or are affected by an affirmative class action determination. Those specifically listed in Rule 16 include:

"(1) The simplification of the issues;

"(2) The necessity or desirability of amendments to the pleadings;

"(3) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof; * * *."

In order to make it clear that the Rule 16 orders and Rule 23 orders are of the same pretrial nature, subparagraph (d) (3) of Rule 23 expressly permits the Court to combine Rule 23 orders and Rule 16 pretrial orders. It would be interesting to learn how this could be done

in a single civil action with the Rule 16 proceedings in the transferee court and the Rule 23 proceedings in the transferor court. The problem becomes practically insoluble when the class action request is in the complaint, with control of amendment of the complaint, the addition of parties and the giving of notice shared contemporaneously by one transferee court and several transferor courts with exclusive separate jurisdiction.

Further, the wide and general understanding that determination of the class action questions is a part of pretrial proceedings constitutes the basis of the listing of this as a subject, the processing of which should begin at the First Principal (Preliminary) Pretrial Conference, in the suggested procedures of the *Manual for Complex and Multidistrict Litigation* approved in September 1968 by the Judicial Conference of the United States. See *Manual*, pages 14, 22 and 23.

Unless the determination of the class action question is treated as a part of the pretrial proceedings, the transferee court will be unable to determine the parties (formal and represented) to the local and transferred actions, will be unable to coordinate the pretrial proceedings and will be unable to control the simplification of the issues through control of amendment of the pleadings, and through comprehensive control of discovery.

Another of the innumerable potential alarming consequences of the construction of Section 1407 submitted by the City is the conflict and delay which may result from early appeals from class action determinations. Under current interpretation there is a right to early appeal by the plaintiff from an order "dismissing" the class action request before trial of the action. Eisen v. Carlisle & Jacquelin (C.A.2, 1966), 370 F.2d 119, cert. den. 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967), 2nd appeal (C.A.2, 1968), 391 F.2d 555. If, in multidistrict-multicircuit litigation such as this, powers to determine the class issues are reserved to the trans-

feror courts, under the City's construction of the statute, multicircuit appeals on conflicting class action requests would be possible. Such multicircuit appeals would be fraught with multiplied delay, confusion, conflict, inordinate expense and inefficiency, which Section 1407 intended to eliminate. With multiple pretrial class issue action orders and appeals in the transferor districts and circuits, the transferee court would be helpless to process the pretrial proceedings in a manner which "will promote the just and efficient conduct of such actions" in accordance with paragraph (a) of Section 1407. On the other hand, if all pretrial proceedings, after order of transfer and before remand, are conducted in the transferee court the pretrial proceedings and appellate proceedings for early review of pretrial rulings will ordinarily lie in the Court of Appeals for the transferee district from the time of transfer until remand. Consequently, coordination at the appellate level will also be achieved in one Court of Appeals, in the absence of an exceptional appeal before transfer.

As shown above, the contentions of the City are based on an erroneous construction of the phrase "pretrial proceedings" as used in the text of the bill. No judicial authority is cited in support of the City's contentions. No other reasons or analogous experience is cited by the City. No part of the legislative history is cited by the City. On the other hand, the legislative history unequivocally supports the plain meaning of the statute. Adoption of the construction proposed by the City would result in an unauthorized and unintended frustrating judicial amendment to this salutary legislation.

 Partition of the pretrial processes in a single claim for relief, with contemporaneous exercise of jurisdiction by two or more district courts over the separated parts, is not only unprecedented in federal jurisprudence but violates well settled principles of judicial management. Two courts of exclusive different jurisdictions, or venues, cannot exercise control over the same single claim for relief at the same time. As noted above under Rule 42(b), F.R.Civ.P., and Section 1407, separate claims for relief can be separated and transferred under Section 1404 as in Leesona Corp. v. Cotwool Manufacturing Corp. (D.S.C.) 204 F.Supp. 139, app. dismissed (C.A.4, 1962), 308 F.2d 895, or remanded under Section 1407. This is possible because several separate claims for relief in a single civil action are severable in the interests of justice. A single claim for relief, however, is separable by issues for trial under Rule 42 only if the entire action and all issues therein remain under control of one court (as distinguished from a judge of the one court). The reason is that, in federal civil procedure, the claim for relief is the irreducible legal unit for purposes of venue and jurisdiction by a single court at a particular time. This unitary concept of the claim for relief permits transfer of the claim for relief from one district court to another as in case of a transfer under Sections 1404(a), or 1407. But in no such separation and transfer is contemporaneous dual control by two or more district courts of a single claim for relief (or separate issues thereof) permissible in the federal system.

 In substance a transfer under Section 1404(a) is a "change of venue" (that is a "change of courtrooms") for completion of pretrial and for trial or other disposition. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L. Ed.2d 945, l. c. 962–963. By analogy a transfer under Section 1407 is a change of venue for pretrial purposes.

 On change of venue the overwhelming authority holds that the jurisdiction and powers of the transferee court are coextensive with that of the transferor court; that the transferee court may make any order to render any judgment that might have been rendered by the transferor court in the absence of transfer. 92 C.J.S. Venue § 207 pp. 980–981 and cases therein cited, cf. Greve v. Gibraltar Enterprises (D.N.M.) 85 F.

Supp. 410, l. c. 414; that after an order changing venue the jurisdiction of the transferor court ceases; and that thereafter the transferor court can issue no further orders, and any steps taken by it are of no effect. Phebus v. Search (C.A.8) 264 F. 407, l. c. 409; 21 C.J.S. Courts § 517a; 20 Am.Jur.2d § 149; 56 Am.Jur. Venue, § 78, p. 79. These principles are applicable to a transfer under Section 1407 from the time of entry of the order of transfer until the time of entry of an order of remand.

In the case of class action determinations made by the transferor court prior to transfer, the provisions of Rule 23 apply permitting the transferee court to determine the class action questions and to review and revise any class action order as in its sound judicial discretion is desirable or necessary in the interests of justice.

In the case of the City under consideration, it does not appear that the class action question is under submission, or that an initial decision is imminent. Discovery processes have been employed but all discovery processes completed or in progress will be useful after the transfer. No cause to defer transfer of the case of the City appears. Transfer without condition will be ordered.

What has been said of the power to determine the class action issue disposes of the request for an order in respect to discovery. This matter is committed to the transferee court after order of transfer. All discovery processes in progress and discovery orders remain in effect unless vacated or modified by the transferee court in the same manner they could be modified by the transferor court. It is clearly stated in the notice and order for hearings of the Panel that discovery processes are not suspended thereby.

### The Principles of Comity

The Panel is keenly aware of the problems of the District Courts and Courts of Appeal in which is pending multi-district litigation subject to transfer under Section 1407. There is no disposition on the part of the Panel to act hastily or without a considerate and well deserved respect for these courts, on principles of comity.

It is obvious that, under Section 1407, there will be proposals to transfer civil actions in which important pretrial motions are under submission or are reaching the point of submission. These motions include motions for dismissal, for summary judgment or for determination of the class action questions, among others. In one case of which the Panel has formal notice, an appeal from a pretrial denial of the class action issue is presently pending in the Court of Appeals of a proposed transferor court. The problems arising from these special circumstances require careful and thoughtful solution by the Panel.

On principles of comity, where appropriate, the Panel has in the past timed its actions and constructed its orders in a manner which will permit the transferor courts (and Courts of Appeals if any are involved) to reach timely decisions on particular issues without abrupt, disconcerting, untimely or inappropriate orders of transfer by the Panel. This policy of comity has been followed in the past and will be followed in the future by the Panel.

The successful use of Section 1407 requires cooperation among the Courts, and by the Panel in an atmosphere of trust, confidence, comity and good will. The Panel believes these conditions exist and will continue to exist.

### Conclusion

For the foregoing reasons, it is hereby

ORDERED that, on the initiative of the Panel, the nine civil treble damage antitrust actions listed in Schedule B attached be, and they are hereby, transferred without special conditions or reservations to the Eastern District of Pennsylvania and assigned to the Honor-

able John W. Lord, Jr., District Judge of the Eastern District of Pennsylvania, with the consent in writing of the transferee court attached hereto.

EDWARD WEINFELD, Judge of the Panel (concurring in part, dissenting in part).

I concur in the transfer of the actions for coordinated or consolidated pretrial proceedings. However, I dissent with respect to class action motions as follows:

I agree that upon the entry of an order by the Panel pursuant to section 1407 of Title 28, the transferee court has jurisdiction to determine class action motions under Rule 23, absent a pending motion in the transferor court. However, when a motion under Rule 23 already has been argued or submitted to a judge in the transferor court and is undetermined by him at the time of the entry of the transfer order by the Panel under section 1407, such transfer order does not divest the transferor judge of jurisdiction to make his determination of the Rule 23 motion. Notwithstanding, the transferor judge, as a matter of comity, may decline to exercise jurisdiction and defer to the transferee court.

## SCHEDULE B*

### Northern District of California

1. The City of Los Angeles and Department of Water and Power of the City of Los Angeles
 v.
 American Radiator & Standard Sanitary Corporation, *et al.*

 Civil Action No. 49866

2. State of Hawaii
 v.
 American Radiator & Standard Sanitary Corporation, *et al.*

 Civil Action No. 49541

### Eastern District of Virginia

3. Edward S. Petros
 v.
 American Radiator & Standard Sanitary Corporation, *et al.*

 Civil Action No. 4887-A

4. Vincent A. Mangano and M & M Builders, Inc.
 v.
 American Radiator & Standard Sanitary Corporation, *et al.*

 Civil Action No. 4888-A

5. Vincent A. Mangano
 v.
 American Radiator & Standard Sanitary Corporation, *et al.*

 Civil Action No. 4889-A

### Southern District of New York

6. The City of New York, *et al,*
 v.
 American Radiator & Standard Sanitary Corporation, *et al.*

 Civil Action No. 68-3149

* (Lettered "B" because of Schedule A listing cases originally transferred. 295 F.Supp. 33)

### Eastern District of Wisconsin

7. State of Wisconsin Civil Action
 v. No. 68-C-230
 Plumbing Fixture Manufacturers Association, *et al.*

### District of Kansas

8. The State of Kansas, ex rel. Robert C. Londerholm, Civil Action
 Attorney General No. T-4481
 v.
 American Standard, Inc., *et al.*

### District of Columbia

9. Blake Construction Co., Inc. Civil Action
 v. No. 2104-68
 American Standard, Inc., *et al.*

---

### APPENDIX

### PART I

From Report of the Co-Ordinating Committee on Multiple Litigation Recommending New Section 1407, Title 28

*Comment on Proposed § 1407. Multi-District Litigation*

As directed by the March 1964 resolution of the Judicial Conference of the United States, the Co-Ordinating Committee for Multiple Litigation (a subcommittee of the Committee on Pre-Trial Procedure and Practice) has examined the need for legislation and rules to treat the special problems presented by multi-district litigation. During the past year the Committee has analyzed its experience in the electrical equipment litigation, consulted with the judges and lawyers who participated in the *ad hoc* coordination program for those cases, and appraised numerous proposals designed to expedite proceedings when related civil actions are pending in more than one district. Proposed § 1407 is recommended as an important step in improving judicial administration for this class of cases.

The Co-Ordinating Committee considered whether the necessary procedural changes could be accomplished under existing rule-making authority. Study led to the conclusion that venue, historically a matter of legislative concern, would be affected by any appropriate solution of the problems. An earlier draft of a similar proposed statute would have provided the necessary statutory authority but would have required substantial implementation by the panel under specifically delegated flexible rule-making authority. After considering the comments received on an earlier draft, the Committee has concluded that its objectives can be achieved by the more limited and specific statute now proposed which authorizes only implementing rules not inconsistent with any Act of Congress or the Federal Rules of Civil Procedure.

Two techniques, court control of pre-trial proceedings and centralization of such proceedings, are basic to the proposal. By authorizing unified treatment for multi-district actions involving one or more common questions of fact, the statute would create the possibility of applying to these cases ordered pre-trial procedures like those generally recom-

mended for protracted cases pending in a single district. See, Handbook of Recommended Procedures for the Trial of Protracted Cases, 25 F.R.D. 351 (adopted by the Judicial Conference of the United States—March 1960). Centralization of pre-trial proceedings is sought in order to minimize the additional litigation costs which are engendered in multi-district litigation through overlapping and conflicting discovery, such as repetitive depositions and document production and minor variances in written interrogatories which may impose undue burdens on the answering parties.

### Scope of the Statute.

The statute affects only the pre-trial stages in multi-district litigation. It would not affect the place of trial in any case or exclude transfer under other statutes (e. g., Title 28, U.S.C. §§ 1404 (a) and 1406(a)) prior to or at the conclusion of pre-trial proceedings.

The civil actions which would be affected by the statute must meet several general requirements. First, they must involve one or more common questions of fact. Second, they must be pending in more than one district. Although present procedures permit coordinated or consolidated treatment of related cases brought in or transferable to a single district, these procedures do not provide for such treatment where the cases must remain pending in several districts. The proposed statute would not affect existing methods of coordinated or consolidated treatment of cases pending in a single district. Third, the circumstances must be such that coordinated or consolidated pre-trial proceedings would promote the just and efficient conduct of such actions. This final requirement limits the applicability of the proposed statute to litigation in which significant economy and efficiency in judicial administration may be obtained.

### Limited Transfer.

The major innovation proposed is transfer solely for pre-trial purposes. The statute's objectives of eliminating conflict and duplication and of assuring efficient and economical pre-trial proceedings would thus be achieved without losing the benefits of local trials in the appropriate districts. An advantage of this statute in multi-district litigation over alternative techniques, such as the class action, is that each action remains as an individual suit with the litigants retaining control over their separate interests. The Advisory Committee's Note to Proposed Rule 23 (F.R.Civ.P.) comments that, "Even when a number of separate actions are proceeding simultaneously, experience shows that the burdens on the parties and the courts can sometimes be reduced by arrangements for avoiding repetitive discovery or the like." *Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the United States District Courts* 118 (U.S. Government Printing Office, 1964). Proposed § 1407 would maximize the litigant's traditional privileges of selecting where, when and how to enforce his substantive rights or assert his defenses while minimizing possible undue complexity from multi-party jury trials.

Under proposed § 1407 the transferee district court would have the usual powers provided by the Federal Rules of Civil Procedure, including authority to render summary judgment, to control and limit pre-trial proceedings, and to impose sanctions for failure to make discovery or comply with pre-trial orders. The deposition judges would have powers over the deponents and the actions as judges of the districts in which the depositions are taken.

Transfer to the most desirable forum is provided by permitting pre-trial transfer "to any district." Present transfer provisions for civil actions, which are not limited to pre-trial pro-

ceedings, restrict the transferee districts available. For example, Title 28, U.S.C. § 1404(a) limits the change "to any other district or division where it [the civil action] might have been brought." Similarly, Title 28, U.S.C. § 1406(a) restricts transfer "to any district or division in which it [a case] could have been brought." Analogous problems are presented when multiple bankruptcy petitions are filed by or against the same bankrupt. Section 32 of the Bankruptcy Act, Title 11, U.S.C. § 55, permits transfer and consolidation "in the court which can proceed with the same for the greatest convenience of parties in interest."

Benefits from consolidated pretrial procedures for related cases have been recognized as grounds for transfer under Title 28, U.S.C. § 1404(a). In Popkin v. Eastern Air Lines, Inc., et al., 204 F.Supp. 426, 431 (E.D.Pa.); mandamus granted *sub nom.*, Barrack, Administratrix, et al., v. Van Dusen U. S. District Judge, et al., 309 F.2d 953 (1962), rev'd. and remanded, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), the district court granted defendants' § 1404(a) motions to transfer 55 personal injury and wrongful death actions to another district where 114 cases which arose from the same crash were pending, stating that:

> "The interest of justice requires the transfer of these cases to the transferee District for these reasons, among others: (1) Consolidation of all the cases arising from this accident for *purposes of proceedings before trial* is likely to procure fairer and more orderly trials for all litigants and save needless time and expense for the public, including jurors, and other litigants whose cases are awaiting trial." (Emphasis supplied.)

*Judicial Panel on Multi-District Litigation.*

The statute provides for the designation of a judicial panel on multi-district

litigation empowered to: (1) initiate transfer proceedings; (2) transfer civil actions for coordinated or consolidated pre-trial proceedings with the consent of the district courts from which the actions are transferred; (3) assign a judge or judges to conduct such proceedings and request the Chief Justice to make inter-circuit assignments for this purpose; (4) act as and designate other judges as deposition judges in any district; and (5) remand transferred actions to the districts from which they were transferred at or before the conclusion of pre-trial proceedings. The Chief Justice is granted authority to designate the panel's membership which shall consist of seven circuit and district judges.

When allocating multi-district litigation among the districts or assigning a judge or judges to conduct pre-trial proceedings, the panel would be functioning primarily in an administrative capacity. Analogous procedures for dividing the judicial business of a single district are found in certain districts where this function is performed by an executive committee of the district judges. For example, General Rule 10(c), Rules of the United States District Court for the Northern District of Illinois, provides:

> "(c) *Executive Committee:* The assignment of cases to calendars and judges * * * shall be done under the general direction of an Executive Committee consisting of three judges of this court * * *."

The Committee's experience in organizing the deposition program for the electrical equipment antitrust litigation indicates that swifter and more flexible procedures for inter-circuit assignment of judges to conduct depositions are desirable. At some stages a program may not require judges or may require several deposition judges. At other times prompt attention from a larger group of judges may be useful. Frequent changes of the judicial personnel assigned to this task may also be

advantageous. To permit rapid changes in the assignment of judicial personnel, the statute authorizes the panel and the judges to whom the cases are assigned to "exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings." In addition, the panel is empowered to delegate this responsibility to other judges "when needed."

In accordance with the national character of the litigation with which the panel will be concerned, its membership will be drawn from seven judicial circuits. The members will be designated by the Chief Justice who presently has analogous functions in connection with inter-circuit assignments and in his capacity as presiding officer of the Judicial Conference of the United States. Title 28, U.S.C. §§ 291–295, 331.

Transfer would be effected by entry of the panel's order and the filing of the required consent of the district courts from which the actions are transferred in the office of the clerk of the transferee district court. This procedure is modeled on present techniques for effecting removal from state courts. Title 28, U.S.C. § 1446(e).

By providing for entry of the panel's transfer orders in the transferee district it is intended to insure that appellate review, when available, will take place in one Court of Appeals. The proposed section does not attempt to alter or clarify present doctrines as to the availability or scope of review of transfer orders. Transfer orders under §§ 1404 (a) and 1406(a) may be reviewable solely by *mandamus*. See, Philip Carey Mfg. Co., et al. v. Taylor, 286 F.2d 782 (C.A. 6, 1961), *cert. den.*, 366 U.S. 948, 81 S.Ct. 1903, 6 L.Ed.2d 1242 (1961) (§ 1404(a) proceeding); Bankers Life & Casualty Co. v. Holland, Chief Judge, et al., 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953) (§ 1406(a) proceed-

ing). On the other hand, it has been argued that such orders are appropriate for direct review under the doctrine of Cohen, Executrix, et al., v. Beneficial Industrial Loan Corp., et al., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1948). Note, Appealability of 1404(a) Orders: Mandamus Misapplied, 67 Yale L.J. 122 (1957). Orders of the district court remanding cases improperly removed from state courts are not reviewable. Title 28, U.S.C. § 1447(d).

*The Electrical Equipment Antitrust Cases.*

The national coordination program for the electrical equipment antitrust cases utilized many novel procedures to simplify and expedite that complex multi-district litigation. The broader and less expensive discovery that resulted from the planned program of eliminating repetitive examinations of deponents and production of documents was possible because of the cooperation of bench and bar under emergency conditions. For a more complete description of that program, see, Neal and Goldberg, The Electrical Equipment Antitrust Cases: Novel Judicial Administration, 50 A.B. A.J. 621 (1964). The devices which were effective in the national program, such as central management of pre-trial proceedings in related cases, and the reduction of deposition delays by assigning a judge to be available for prompt rulings throughout a deposition, commend themselves for use in future multi-district litigation. Proposed § 1407 would enhance the possibility that these and other effective economic procedures will be applied in the future to multi-district litigation.

*Submission.*

Your Sub-Committee to study problems of multiple litigation submits this report to supplement the previous reports and respectfully recommends

favorable consideration of proposed § 1407 at the forthcoming meeting of the Judicial Conference of the United States.

Chief Circuit Judge Alfred P. Murrah, Chairman.

Chief Judge Sylvester J. Ryan

Chief Judge Thomas J. Clary

Chief Judge Roszel C. Thomsen

Chief Judge Joe E. Estes

Judge George H. Boldt

Judge William M. Byrne

Judge William H. Becker

Judge Edwin A. Robson

March 2, 1965

———◆———

## Part II

Congressman Celler requested the views of the Department of Justice. The Department, in a letter dated January 7, 1966, and signed by Deputy Attorney General Ramsey Clark, favored the enactment of the bill with two amendments, (1) excluding government prosecutions under the antitrust laws from the scope of the bill, and (2) . deletion of the provisions of the original bill requiring consent of the district court from which the action is transferred before the transfer is made. This letter reads as follows:

"This is in response to your request for the views of the Department of Justice concerning H.R. 8276, a bill 'To provide for the temporary transfer to a single district for coordinated or consolidated pretrial proceedings of civil actions pending in different districts which involve one or more common questions of fact, and for other purposes.'

"The bill would add a new section 1407 to title 28, United States Code, which would permit the transfer to a single district for coordinated or consolidated pretrial proceedings of civil actions pending in different districts which involve one or more common questions of fact. Such transfer shall be made by a judicial panel on multidistrict litigation, consisting of seven circuit and district judges appointed by the Chief Justice of the United States, upon determination by the panel that the transfer will promote justice and efficient conduct of such suits. The transfer requires the consent of the court in which the suit is pending, and each action so transferred shall be remanded by the panel at or before the conclusion of the pretrial proceedings to the district from which it was transferred. The panel may separate any claim, cross claim, counterclaim, or third party claim and remand any of such claims before the remainder of the action is remanded.

"The coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges assigned by the judicial panel. The panel may request, for this purpose, the temporary assignment of a circuit or district judge to the transferee district by the Chief Justice of the United States or the chief judge of the circuit. Proceedings for the transfer of an action may be initiated by the judicial panel by notice to the parties in all of the actions concerned of the manner, time and place of the hearing to determine whether the transfer shall be made. The concurrence of four members of the panel shall be necessary to any action of the panel. When actions have been transferred by order of the panel, no district court refusing to consent to the transfer of related litigation may make any order for or

permit discovery in conflict with the discovery proceedings in the transferred actions.

"At present, there is no specific provision governing the conduct of discovery and pretrial proceedings on a consolidated basis. The massive national discovery program, which was established in response to the unprecedented number of electrical equipment treble damage actions, was instituted under the authority of Supreme Court rule-making power, which in turn resulted in a delegation of authority to a coordinating committee of judges for the purpose of working out an appropriate procedure for handling common discovery problems. The bill is an outgrowth of the experience gained under this national discovery program, and is an apparent attempt to codify some of the steps taken thereunder. [For a general discussion of the Program, see Neal and Goldberg, The Electrical Equipment Antitrust Cases: Novel Judicial Administration, 50 A.B.A.J. 621 (1964).]

"This legislation was recommended by the Judicial Conference of the United States. The Department of Justice favors its enactment but suggests that it be amended in two respects.

"We believe that Government prosecutions under the antitrust laws should be excluded from the scope of the measure. If the bill applied to such antitrust actions, it is anticipated that numerous private plaintiffs would file treble damage suits immediately following the filing of a Government suit. In consequence, Government suits filed by this Department would almost certainly be substantially delayed, often to the disadvantage of injured competitors who are awaiting the outcome of the Government suit upon which to predicate their damage actions. Furthermore there is no need for participation of injured competitors at this stage since section 5(b) of the Clayton Act (15 U.S.C. 16(b)) tolls the running of the statute of limitations on their damage suits while the Government litigation is proceeding. Private plaintiffs may use discovery to uncover information relating only to damages or information that we have already obtained through the use of grand juries, civil investigative demands or informal interviews. Moreover, if we wish to avoid such delay, we may be forced to share with private plaintiffs information already in our possession that we prefer to keep confidential and to relinquish the control of a consolidated discovery proceeding to a private plaintiff's attorney. While exempting the Government from this legislation may occasionally burden defendants because they may have to answer similar questions posed both by the Government and by private parties, this is justified by the importance to the public of securing relief in antitrust cases as quickly as possible. To treat the Government differently is not arbitrary, for the purpose of the governmental suit normally differs from that of a private suit: the Government seeks to protect the public from competitive injury, while private parties are primarily interested in recovering damages for injuries already suffered. We therefore recommend that the Government's civil antitrust suits be exempted from this legislation. On the other hand, the Government's damage suits should be included, for the Government's purpose in bringing such a suit is the same as that of a private party. Accordingly, it is suggested that a new subsection (g) be added to section 1 of the bill to read as follows:

"(g) Nothing in this section shall apply to any action in which the United States is a complainant arising under the antitrust laws. 'Antitrust laws' as used herein include those acts referred to in the Act of October 15, 1914, as amended, (38 Stat. 730; 15 U.S.C. 12), and

also include the Act of June 19, 1936 (49 Stat. 1526; 15 U.S.C. 13, 13a and 13b) and the Act of September 26, 1914, as added March 21, 1938 (52 Stat. 116, 117, 15 U.S.C. 56); but shall not include section 4A of the Act of October 15, 1914, as added July 7, 1955 (69 Stat. 282; 15 U.S.C. 15a).

"Also, we believe that the provision of the bill which requires the consent of the district court from which an action is transferred should be deleted. To require such consent seems superfluous since seven circuit and district judges must consider the proposed transfer and four members of the panel approve it before it can take place. Requiring the consent of the transferor district judge would give a veto power and in essence require voluntary cooperation of all in order to consolidate discovery proceedings.

"The Bureau of the Budget has advised that there is no objection to the submission of this report from the standpoint of the Administration's program."